KOLEHMAINEN *v.* E. E. MILLS TRUCKING CO., INC.

1. PARTIES—JOINDER—NEGLIGENCE—PLEADING.

In action by administratrix of estate of deceased motorist whose car first collided with appellant's tractor and trailer that had descended a hill on ice-covered pavement and was then struck from rear by other defendant's truck, where plaintiff's declaration asserted decedent was injured as a result of joint negligence of the defendants and clearly set forth in separate paragraphs the alleged negligence of each defendant and plainly charged concurrent negligence, trial court's refusal to dismiss action because of misjoinder of parties was proper (3 Comp. Laws 1929, §§ 14021, 14023; Court Rule No. 38, § 3 [1933]).

2. TORTS—DISCONTINUANCE OF ACTION AGAINST ONE OF SEVERAL DEFENDANTS—COURT RULES—VERDICTS AND FINDINGS.

Court rule providing that in case an action is brought against two or more defendants, the plaintiff should not be required to discontinue as to any of them, but requiring jury by its verdict or court by its finding in a trial by the court without

Comments on concurrent negligence and causation, see 2 Restatement, Torts, § 441 and comment (d).
Functions of court and jury on question of causation, see 2 Restatement, Torts, § 434; on question of contributory negligence, see 2 Restatement, Torts, § 476 and § 285, comments (e) and (f).

a jury to show which of them are, and which are not, liable
to plaintiff is applicable to actions *ex delicto* (Court Rule
No. 38, § 3 [1933]).

3. PLEADING—NEGLIGENCE—CONCURRENT NEGLIGENCE—JOINT NEGLI-
GENCE.

Declaration, containing a single count, which alleged specific
acts of independent negligence by each defendant and which
also charged that the concurrent negligence of both defend-
ants brought plaintiff injury did not constitute a charge of
joint negligence (3 Comp. Laws 1929, §§ 14021, 14023).

4. AUTOMOBILES—NEGLIGENCE—EVIDENCE—PROXIMATE CAUSE.

In action for fatal injuries to plaintiff's decedent, evidence that
appellant defendant's tractor and trailer 36 feet in length and
about 9 feet wide, loaded with a 5-ton load, rounded curve
and descended hill about 750 feet long at speed of 20 miles
an hour at 11 o'clock at night, skidded down the last 150 or
200 feet of hill with equipment out of control back and forth
across snow- and ice-covered highway paved 18 feet wide and
later struck fender on decedent's oncoming car and ended up
against guard rail on wrong side of road so as to block
passage for oncoming vehicles and that other defendant's on-
coming truck collided with rear of decedent's car about two
seconds later *held,* sufficient to establish that negligence of
appellant's driver was the sole proximate cause of death of
plaintiff's decedent.

5. SAME—NEGLIGENCE—SPEED—QUESTION FOR JURY.

Whether 20-mile-an-hour speed of tractor and trailer 36 feet
long and carrying a 5-ton load, around a curve and down
snow- and ice-covered pavement 18 feet wide at 11 o'clock at
night, was reasonable and careful under circumstances dis-
closed by testimony was a question of fact properly submitted
to jury in action by administratrix of estate of motorist killed
in collision with tractor and trailer at foot of hill.

6. SAME—NEGLIGENCE—SUDDEN DANGER.

Motorist, driving at speed of 20 to 25 miles an hour, who is
suddenly confronted with danger of collision with oncoming
tractor and trailer, negligently driven back and forth
across 18-foot pavement at 11 o'clock at night in motorist's
lane of travel, need not be able to stop on slippery pavement
at foot of hill within 150 or 200 feet after peril appears on
penalty of being declared negligent as a matter of law.

7. NEGLIGENCE—IMPENDING DANGER—STANDARD OF CARE A QUESTION
   FOR JURY.

   The question of whether the efforts of an injured person to
   escape collision with another approaching vehicle constituted
   due care is a question for the jury where the facts are such
   that reasonable minds might differ in determining such issue.

8. DAMAGES — DEATH — EXPECTANCY — FAMILY — DOCTOR, HOS-
   PITAL, AND FUNERAL EXPENSES.

   Verdict of $12,151.85 *held*, not excessive for death of 33-year-old
   man in good health with a life expectancy of 33.21 years who
   had graduated from a college of mining and technology who
   left a family consisting of 29-year-old wife with an expectancy
   of 36.03 years and two children, five and three years of age,
   all of whom he supported on a salary of $140 a month, where
   it appears he lived three days in a semi-conscious condition
   and for whom a total of $420.10 was expended in doctor,
   hospital, and burial expenses.

Appeal from St. Joseph; Jacobs (Theo T.), J.
Submitted January 7, 1942. (Docket No. 40, Cal-
endar No. 41,807.) Decided April 6, 1942.

Case by Ina Kolehmainen, administratrix of the
estate of William Kolehmainen, deceased, against
E. E. Mills Trucking Company, Inc., an Indiana
corporation, and Commercial Carriers, Inc., a
Michigan corporation, for damages for personal in-
juries sustained in a motor vehicle collision caus-
ing death of plaintiff's decedent. From verdict and
judgment for plaintiff against defendant E. E. Mills
Trucking Company, Inc., it appeals. Affirmed.

*Robert P. Polleys* and *Jacob W. Hirvela,* for
plaintiff.

*Hemphling & Smith,* for defendant E. E. Mills
Trucking Co., Inc.

NORTH, J. This is an appeal from a judgment of
the circuit court of St. Joseph county, entered in
favor of Ina Kolehmainen, as administratrix of the

estate of her husband, William Kolehmainen, deceased, on the verdict of a jury awarding plaintiff the sum of $12,151.85.

In this action plaintiff alleged negligence on the part of defendant E. E. Mills Trucking Company, Inc., in the operation of its truck, which negligence she charged led to a collision between defendant's vehicle and deceased's automobile, resulting in fatal injuries to plaintiff's decedent.

The accident occurred on US-112, about three and one-half miles west of Mottville, Michigan, at about 11 o'clock on the night of December 21, 1939. Plaintiff's decedent was driving a Ford sedan. With him were four passengers. The collision took place in a depression between two hills, where US-112 runs east and west. The east hill, down which plaintiff's decedent was driving, is about 1,500 feet long. The west hill, down which defendant's truck, driven by Harvey Smith, was proceeding, is about the same length. Approximately 700 to 750 feet west of the point of collision the road curves toward the south. The pavement is 18 feet wide, and the berm is of gravel and asphalt. Guard rails, about three feet high and with posts about 16 to 18 feet apart, are on both sides of the road, extending east and west of the point of collision.

The night was clear, but the road was covered with a sheet of ice, over which was a layer of snow about one-quarter to one-half inch thick. Over the summit of the east hill plaintiff's decedent passed a truck of Commercial Carriers, Inc. Decedent increased his rate of speed to about 35 or 40 miles an hour to effect the passing, then immediately returned to his right side of the road and reduced his speed to about 30 miles an hour. Meanwhile, the tractor and trailer of the Mills company, traveling about 20 miles an hour, rounded the curve, which was ap-

proximately 750 feet from the point of collision, and continued down the west hill. When the Mills' truck was about 150 to 200 feet from the Kolehmainen car, the truck driver Smith lost control, his equipment skidded several times back and forth over the center line of the highway, went off the pavement, knocked down three guard rails on the south side, and was deflected almost directly across the pavement. It hit the left front fender of decedent's automobile and came to a stop against the north guard rail, blocking the way to the west. The front end of the Kolehmainen vehicle came to a stop against the right door of the Mills' truck cab.

When about 150 to 200 feet from the Mills' truck, Kolehmainen noticed that it was encroaching upon his side of the road, and he immediately took his foot off the accelerator, reduced his rate of speed from 30 miles per hour to 20 or 25 miles per hour, and drove off the pavement as far onto the berm as the guard rail would permit. Because of the probability of skidding, he did not apply his brakes. Approximately two seconds after he collided with the Mills' truck, the Commercial Carrier's vehicle struck the Ford from the rear. Plaintiff's decedent was taken to a hospital, where he died three days later as a result of his injuries.

As administratrix of her husband's estate, plaintiff brought this action against the E. E. Mills Trucking Company, Inc., and against the Commercial Carriers, Inc., alleging decedent's freedom from contributory negligence, charging specific acts of negligence on the part of each defendant and that such negligence had caused decedent's injuries, suffering, and death, and asking damages in the sum of $100,000. The Mills company moved to dismiss on the pleadings for misjoinder of parties, but the motion was denied. Answers were filed, denying the

material allegations of plaintiff's declaration and alleging plaintiff's decedent had been guilty of contributory negligence.

At the trial plaintiff sought to prove negligence on the part of both defendants, and both offered evidence in rebuttal. At the end of plaintiff's proofs the two defendants renewed their motion to dismiss for misjoinder, but the trial court declined to grant said motion. Defendant Mills company then made motion for a directed verdict on the grounds that no negligence was shown on the part of defendant Mills company; that its negligence was not shown to be the proximate cause of decedent's death; that plaintiff's decedent was guilty of contributory negligence as a matter of law; that the evidence adduced does not show a joint tort of the two defendants; that plaintiff should have been required to elect which defendant she would proceed against in the case; that the evidence did not establish which of the motor vehicles inflicted the injuries and caused the death of plaintiff's decedent.

At the conclusion of all proofs defendant Mills company again raised the question of misjoinder of parties by motion to dismiss. The trial court refused the motion, and after charging the jury submitted to them the question of defendants' negligence. They were also instructed to answer the following questions: (1) Did the death of William Kolehmainen result solely from the collision with the truck operated by Commercial Carriers, Inc.? (2) Did the death of William Kolehmainen result solely from the collision with the truck operated by E. E. Mills Trucking Company, Inc.? The jury answered the first question in the negative and the second in the affirmative. Plaintiff was awarded damages in the amount of $12,151.85 against the Mills company, and judgment was entered thereon;

but as to Commercial Carriers, Inc., the jury's verdict was not guilty.

Defendant Mills company made motion for a new trial on substantially the same grounds offered as reasons for its previous motions and, in addition, that the verdict was grossly excessive. The trial court refused to grant this motion. The Mills company appeals, raising the following questions of law: (1) Did the trial court err in refusing to grant defendant's motion to dismiss upon the pleadings and upon the evidence for misjoinder of parties? (2) Does the evidence show that as a matter of law there was no negligence on the part of appellant which was the proximate cause of the injuries to and death of plaintiff's decedent? (3) Was the plaintiff's decedent guilty of contributory negligence as a matter of law? (4) Was the verdict grossly excessive?

There is no merit to appellant's contention that plaintiff's suit should have been dismissed because of misjoinder of parties. While plaintiff's declaration asserts that her decedent was injured "as a result of the joint careless, negligent and unlawful conduct of the defendants," nonetheless the declaration clearly sets forth in separate paragraphs the alleged negligence of each defendant and plainly charges concurrent negligence.

"But in case an action is brought against two or more defendants, plaintiff shall not be required to discontinue as to any of them, but the jury shall show by their verdict, or the court by its finding in a trial by the court without a jury, which of them are and which of them are not liable to the plaintiff, and judgment shall be given accordingly." Court Rule No. 38, § 3 (1933).

The above-quoted court rule was held to apply to actions, *ex delicto* in *Barkman* v. *Montague,* 297 Mich. 538, and in the same case we said:

"The declaration of a single count alleged specific acts of independent negligence by each defendant and, while it is also charged that, the concurrent negligence of both defendants brought him injury, did not constitute a charge of joint negligence."

On this phase of the law in this jurisdiction, see 3 Comp. Laws 1929, §§ 14021, 14023 (Stat. Ann. §§ 27.665, 27.667).

Nor are we in accord with appellant's contention that as a matter of law there was no negligence proven on the part of appellant which was the proximate cause of the injury sustained by plaintiff's decedent. Our review of the record satisfies us that on this phase of the case a question of fact was presented for the jury. Appellant's tractor and trailer were 36 feet in length and carried a load of five tons. The trailer was half as wide as the 18-foot pavement on which it was travelling. The slightest deviation to the left from its lawful position on the right-hand half of the pavement would create a dangerous condition for drivers approaching from the opposite direction even on their own side of the pavement. Both appellant and the driver of its motor vehicle were chargeable with knowledge of the dangerous propensities of this heavy and unwieldy outfit, especially while proceeding downhill on a pavement which was narrow and icy. Appellant's driver testified that, when he came around the curve (750 feet west of the point of the accident), he saw the lights of decedent's car then coming down the hill from the opposite direction. There is testimony that the tracks in the snow, made by appellant's vehicle, disclosed that it had gone off. the pavement and onto the berm as it came around the curve and that the tracks made by appellant's vehicle from that point disclosed it went back and forth across the pavement until it reached the place

of collision. There is also testimony that the berm along the pavement, over which appellant's vehicle passed, was six feet wide, at least in some places, and surfaced with crushed stone and gravel, thus affording opportunity for a careful driver to have stopped appellant's truck or to have proceeded carefully in going down the hill towards the point of the accident.

Among other charges of negligence made in plaintiff's declaration is that appellant's driver carelessly, negligently and unlawfully failed to drive his truck at a careful and prudent rate of speed, not greater than was reasonable and proper having due regard for the traffic, surface and width of the pavement, and conditions then and there existing, and that he carelessly and negligently failed to keep his truck under control and carelessly and negligently failed to turn his truck onto his own side of the road, so there would be room to pass and avoid collision with the automobile which plaintiff's decedent was driving.

Whether the speed at which the vehicle was traveling was reasonable and careful, under such circumstances as are disclosed by the testimony in the instant case, was a question of fact, and was properly submitted to the jury. *Bugbee* v. *Fowle,* 277 Mich. 485; *Grant* v. *Richardson,* 276 Mich. 151. In the case at bar there was sufficient testimony to sustain the verdict of the jury that the death of plaintiff's decedent resulted solely from a collision with appellant's truck, of which the proximate cause was the negligence of appellant's driver.

From the record before us we are satisfied the trial court correctly ruled that plaintiff's decedent could not as a matter of law be held guilty of contributory negligence. The pertinent facts of this phase of the record are sufficiently stated above; and

the legal aspect is within former decisions of this court, such as *Lindenfeld* v. *Michigan Interstate Truck Co.,* 274 Mich. 681, wherein one of the headnotes reads:

"Motorist suddenly confronted with danger of collision with truck negligently driven in his lane of travel need not be able to stop on slippery pavement, going down hill, within 100 feet after peril appears, on penalty of being declared negligent as a matter of law."

We have repeatedly held that the question of whether the efforts of an injured person to escape collision with another approaching vehicle constituted due care was a question for the jury. This is true in every case where in determining such issue reasonable minds might differ. *Triestram* v. *Way,* 286 Mich. 13; *Flynn* v. *Kramer,* 271 Mich. 500.

Appellant's contention that the verdict was grossly excessive is not tenable. The evidence discloses that plaintiff's decedent at the time of the accident was 33 years of age, in good health, and had a life expectancy of 33.21 years; that his wife was 29 years of age, in good health, and her expectancy was 36.03; and that they were the parents of two children who at the time of the trial were respectively five and three years of age. Decedent was a graduate of the Michigan College of Mining and Technology. From November, 1935, to August, 1939, he worked in the highway engineering department of Houghton county. His supervisor testified that his work was good. From the time of his marriage decedent and his family resided at Hancock in the home of Mrs. Kolehmainen's mother, Anna Kovala. She testified that decedent supported his family, that he bought groceries and "everything that was needed—clothing, shoes, et cetera," and that the children were very well clothed. In

October, 1939, decedent went to Detroit to obtain work, leaving his family at Hancock. In Detroit he obtained employment as a stationary engineer for the board of education, at a salary of $140 per month. Between the latter part of October, 1939, and the time of the accident in December, 1939, decedent sent substantial sums of money on three occasions to his wife for family use. The undertaker who took decedent from the scene of accident to the hospital testified that the injured man was semi-conscious and seemed to be suffering a great deal. There was a doctor's bill of $67.50, a hospital bill of $22.60, and burial expenses of $330. In the light of the foregoing and other facts appearing from the record it cannot be said that the verdict rendered was excessive. *Watrous* v. *Conor,* 266 Mich. 397; *Musgrove* v. *Railway,* 259 Mich. 469; *Clark* v. *Lawrence Baking Co.,* 240 Mich. 352.

The judgment entered in the circuit court is affirmed. Costs to appellee.

CHANDLER, C. J., and BOYLES, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.